IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| THORIN JOHN LINDSTROM and KRISTIN KATHLEEN LINDSTROM, | CIVIL NO. 16-00079 DKW-RLP |
| Plaintiffs, | |
| vs. | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MICHAEL REID'S MOTION TO DISMISS |
| MOFFETT PROPERTIES; WILLIAM B. MOFFETT; and MICHAEL REID, | |
| Defendants. | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT MICHAEL REID'S MOTION TO DISMISS**

**INTRODUCTION**

Plaintiffs Thorin John Lindstrom and Kristin Kathleen Lindstrom allege various state-law claims arising out of their purchase of undeveloped real property from seller Michael Reid and realtor Defendants William B. Moffett and Moffett Properties.   The Lindstroms claim that they were unable to build on the property because of grading and fill work that defendants did not disclose.

Because the Complaint sufficiently states claims against Reid for breach of contract and negligent misrepresentation, the Motion to Dismiss is DENIED IN PART as to those causes of action.   For the reasons detailed below, Reid's Motion

is GRANTED IN PART with respect to the Lindstroms' claims for breach of warranties, rescission, tortious breach of contract, intentional misrepresentation and/or fraud.   The Lindstroms are GRANTED LEAVE TO AMEND only their intentional misrepresentation and/or fraud claims.

## BACKGROUND

### I.    Plaintiffs' Complaint

This case arises from the Lindstroms' purchase of Lot 35 A, located at 108 A Pua Niu Way, Lahaina, Hawaii 96791 ("Property"), from Reid for the sum of $1,227,444.25.   Complaint ¶ 7.   Following an initial offer and counter offer, the Lindstroms and Reid entered into a Purchase Contract for the Property, with the sale closing on April 15, 2014.   Complaint ¶¶ 7, 10, Ex. A (2/26/2014 Counter Offer), Dkt. No. 1; Mem. in Supp. of Mot., Declaration of Michael Reid, Ex. A (Purchase Contract), Dkt. No. 23-3.   Moffett Properties acted as the real estate broker for both buyer and seller in the transaction under a dual agency agreement.   Complaint ¶ 22. Defendant William B. ("Buz") Moffett, an employee of Defendant Moffett Properties, showed the Lindstroms the Property.   Complaint ¶ 8.   Non-party George Van Fischer, another employee of Moffett Properties, represented Reid in the sale.   *See* Complaint, Ex. A (Counter Offer); Ex. B (3/7/14 Seller Disclosure), Dkt. No. 1.

The Lindstroms submitted an offer on February 25, 2014. Reid countered on February 26, 2014. Reid's Counter Offer included an "As Is" Condition Addendum and Seller's Real Property Disclosure Statement. *See* Counter Offer; Seller Disclosure; Purchase Contract; *see also* Pls.' Mem. in Opp'n, Ex. A (Addendum to Seller Disclosure), Dkt. No. 30-1; Reply, Ex. A (Addendum to Seller Disclosure), Dkt. No. 34-2. The Counter Offer provided that fill existed on the Property and that it was being sold "as is" without warranties. For their part, the Lindstroms allege that—

> As part of the contract, Reid provided a *Seller's Real Property Disclosure Statement* ("Disclosure Statement") to Plaintiffs pursuant to *H.R.S.*, Chapter 508D, Exhibit B. The Disclosure Statement dated March 7, 2014 stated there was filled land on the Property; however, the Disclosure Statement failed to disclose the extent of the actual grading and fill. Further the Disclosure Statement failed to disclose the grading and fill were substantially in excess of what was permitted by the grading permit (G-RS 2005/202) previously filed with the Maui Building Department.

Complaint ¶ 9.

According to the Lindstroms, "[a]s an inducement to [them] to purchase the Property, Moffett showed the Property to [the Lindstroms] and deliberately and intentionally failed to disclose a hidden and dangerous defect in and on the Property resulting from the improper grading and fill of the Property." Complaint ¶ 8. The Lindstroms allege, "[o]n information and belief, [Defendants] knew or should have known of [(1)] the hidden defect on the Property due to the excess and improper

3

grading and fill on the Property[,]" Complaint ¶ 16, and "[(2)] the failure to conduct the proper soil investigation and the failure to obtain the proper grading permit, as well [as] the grading and fill on the Property without any grading permit or in excess of what the grading permit allowed."   Complaint ¶ 17.

After closing, the Lindstroms hired Marty Cooper, a Maui architect, to prepare plans and specifications to build a residence on the Property.   Complaint ¶ 10.   Following the submission of the plans and specifications to the Maui Building Department for a building permit, the Lindstroms' permit application was denied and they were informed, allegedly for the first time, that there was improper grading and fill located on the only feasible building area on the Property. Complaint ¶ 11.   The Lindstroms also hired Kenneth Stewart, a geotechnical engineer, who conducted a survey of the Property, and found that no soil investigation was performed as required by the Maui Grading Code.   Moreover, according to the Lindstroms, the Maui Public Works Department denied any soil report having been submitted to that department.   Complaint ¶ 12.

The Complaint alleges that excessive and improper grading and fill has resulted in a very high probability of future settlement of the filled soil, as well as a high probability of ground movement due to the lack of proper materials and compaction of the materials used for the fill.   The Property accordingly has a value substantially less than the price the Lindstroms paid to Reid based on the defective

condition.   The Lindstroms claim that the cost to remedy the defective condition is

substantial and, even if remedial work is done, it is unknown if the condition could

be remedied.   Complaint ¶¶ 13-14.

The Lindstroms filed their Complaint on February 23, 2016, asserting the

following causes of action: (1) breach of contract against Reid (Count I); (2) breach

of contract and fiduciary duty against Moffett Properties (Count II); (3) breach of

express and implied warranties against Reid (Count III); (4) rescission (Count IV);

(5) tortious breach of contract against Reid (Count V); (6) intentional and negligent

misrepresentation against all Defendants (Count VI); (7) fraud against all

Defendants (Count VII); and (8) unfair and deceptive trade practices against Moffett

Properties (Count VIII).

Reid seeks dismissal of the claims brought against him.   No other Defendant

has joined in Reid's Motion.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a

complaint that fails "to state a claim upon which relief can be granted."   Rule

12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain

statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P.

8(a)(2).   The Court may dismiss a complaint either because it lacks a cognizable

legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory.   *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).

Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   555 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).   "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*   Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Id.* (citing *Twombly*, 550 U.S. at 555).   Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* (citing *Twombly*, 550 U.S. at 556).   Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief, as required by Rule 8(a)(2).   *Id.* at 679.

A court may consider certain documents attached to a complaint, as well as documents incorporated by reference into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."   *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003); *see also id.* at 908 (A court may "consider certain materials—documents attached to the

6

complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting [a Rule 12(b)(6)] motion to dismiss into a motion for summary judgment.").

## DISCUSSION

Reid moves to dismiss the claims against him with prejudice.   Because the Lindstroms sufficiently state claims for breach of contract (Count I) and negligent misrepresentation (Count VI), the Motion is denied as to those claims.   The Motion is granted with respect to Count III (Breach of Express and Implied Warranties), Count IV (Rescission), and Count V (Tortious Breach of Contract)—those claims are dismissed with prejudice.   The Lindstroms' claims for intentional misrepresentation (Count VI) and fraud (Count VII) are dismissed with leave to amend, with instructions below.

## I.    **Count I (Breach of Contract)**

Reid moves to dismiss Count I both because it fails to allege the elements of a breach of contract cause of action and because any such claim is barred as a matter of law by the terms of the Purchase Contract itself.   The Court disagrees on both accounts.   Because the Lindstroms sufficiently state a claim for breach of contract, the Motion is denied as to Count I.

### A.    <u>Count I States A Claim For Breach Of Contract</u>

A breach of contract claim must set forth (1) the contract at issue; (2) the parties to the contract; (3) whether plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by defendants; and (5) when and how defendants allegedly breached the contract. *See Evergreen Eng'rg, Inc. v. Green Energy Team LLC*, 884 F. Supp. 2d 1049, 1059 (D. Haw. 2012); *see also Otani v. State Farm Fire & Cas. Co.*, 927 F. Supp. 1330, 1335 (D. Haw. 1996) ("In breach of contract actions, however, the complaint must, at minimum, cite the contractual provision allegedly violated. Generalized allegations of a contractual breach are not sufficient . . . the complaint must specify what provisions of the contract have been breached to state a viable claim for relief under contract law.")). The Complaint satisfies those elements here.

The Lindstroms allege in Count I that the "existence of the defect on the Property, as well as the failure to disclose the excessive grading and fill, and that grading was conducted without any grading permit or in excess of what the grading permit allowed and other failures by Reid, constitute a breach of the contract by Reid." Complaint ¶ 19. Moreover, they assert that Reid revealed only part of the material information in his possession that he was required by the Purchase Contract to disclose in full. *See* Complaint ¶¶ 9, 16, 17; *see also* Purchase Contract; Seller Disclosure. As a result, the Lindstroms purportedly sustained damages. *See*

Complaint ¶¶ 14, 20.   These allegations sufficiently state a claim for breach of contract.

Reid argues that the claim is not plausible because "[i]n order for that disclosure [that Reid was not aware of any grading issues] to constitute a breach of the agreement, [the] Lindstroms would have to allege that Mr. Reid in fact knew of the grading issues.   They make no such allegation."   Reply at 5.   To the contrary, the Complaint alleges that Reid knew or should have known of (1) "the hidden defect on the Property due to the excessive and improper grading and fill on the Property," Complaint ¶ 16; and (2) "the failure to conduct the proper soil investigation and the failure to obtain the proper grading permit, as well [as] the grading and fill on the Property without any grading permit or in excess of what the grading permit allowed."   Complaint ¶ 17.   Assuming the truth of these allegations for purposes of the instant Motion, Count I plausibly alleges "sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 555 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

### B.    The Purchase Contract Does Not Bar Count I As A Matter Of Law

Reid also argues that, because the existence of fill on the Property was disclosed to the Lindstroms, and the Purchase Contract obligated them to ascertain the extent of the "defect" through their own inspection, they cannot maintain a

9

breach of contract action as matter of law.   Reid contends that the Lindstroms may

not assert a claim based upon his failure to fully disclose any defect because they

elected to purchase the Property notwithstanding the information provided in the

Seller Disclosure and verbiage in the "As Is" Addendum that "there may be latent

defects, hidden defects, or defects which time may reveal."   Complaint, Ex. A

(Counter Offer).

The Purchase Contract requires that Reid provide to the Lindstroms a Seller

Disclosure in good faith and with due care, and that he shall disclose all material

facts relating to the subject property that (1) are within Reid's knowledge or control;

(2) can be observed from visible, accessible areas; or (3) are required to be disclosed

under Hawaii Revised Statutes §§ 508D-4.5 (relating to any release or waiver of

construction defects by Reid) or 508D-15.[1]   *See* Purchase Contract; *see also* Am.

---

[1]The relevant statutory sections provide as follows:

> "Disclosure statement" means a written statement prepared by the seller, or at the seller's direction, that purports to fully and accurately disclose all material facts relating to the residential real property being offered for sale that:
>
> > (1) Are within the knowledge or control of the seller;
> > (2) Can be observed from visible, accessible areas; or
> > (3) Are required to be disclosed under sections 508D-4.5 and 508D-15.
>
> "Material fact" means any fact, defect, or condition, past or present, that would be expected to measurably affect the value to a reasonable person of the residential real property being offered for sale.   The disclosure statement shall not be construed as a substitute for any expert inspection, professional advice, or warranty that the buyer may wish to obtain.

Mem. in Supp. at 5-6.   The Purchase Contract further provides that "[t]he
Disclosure Statement is NOT a warranty of any kind.   Under Chapter 508D, the
Disclosure Statement shall not be construed as a substitute for any expert inspection,
professional advice, or warranty that Buyer may wish to obtain."   Purchase
Contract at 6.   *See also* Seller Disclosure ("THIS DISCLOSURE IS NOT A
WARRANTY OF ANY KIND BY SELLER OR BY ANY AGENT
REPRESENTING SELLER AND IS NOT A SUBSTITUTE FOR ANY EXPERT
INSPECTION, PROFESSIONAL ADVICE, OR WARRANTY THAT BUYER
MAY WISH TO OBTAIN.").

      Reid argues that, because he disclosed the existence of fill on the Property in
the Disclosure Statement, *see* Complaint, Ex. B, the Lindstroms were accordingly on
notice of fill and "should have investigated further, particularly given the other
provisions in the Purchase Contract," including the right to inspect with
professionals of their choosing.   Am. Mem. in Supp. at 6 (citing Purchase Contract
§ J-1).   Coupled with the "As Is" Condition Addendum of the Purchase Contract,
Reid asserts that the Lindstroms cannot maintain a breach of contract claim because

---

HRS § 508D-1.   Section 508D-4.5 provides that "[a]ny release from or waiver of liability . . . by a
seller to any government agency, contractor as defined in section 444-1, or engineer, architect,
land surveyor, or landscape architect licensed . . . for any defect, mistake, or omission in the design
or construction of any residential real property that measurably affects the value of the residential
real property is a material fact that shall be contained in a disclosure statement."   Finally, Section
508D-15 defines when sellers are required to disclose the location of real property within certain
designated boundary zones.

they agreed that they were responsible for ascertaining the condition of the property and identifying any defects associated with it, including those noted in the Disclosure Statement.   *See* Am. Mem. in Supp. at 7.

The Lindstroms argue in opposition that the Addendum to the Seller Disclosure failed to provide the required explanation for all items that Reid checked on the Disclosure Statement, including for item 41 relating to "filled land" on the Property.   According to the Lindstroms, by checking Box 41 on the Seller Disclosure and then failing to offer additional information that Reid had regarding the filled land, Reid breached his contractual obligation under the Purchase Contract.   That is, they allege that Reid breached the Purchase Contract by disclosing only part of the "material information" in his possession regarding the condition of the Property.   *See* Complaint ¶¶ 9, 16, 17, 19.   Notably, the terms of the Purchase Contract required Reid to "fully and accurately disclose in writing to a buyer all 'material facts' concerning the property."   Seller Disclosure.   Whether Reid complied with this requirement or breached this term is a question of fact that the Court cannot determine at present.   At this stage of the proceedings, viewing the pleadings under a Rule 12(b)(6) standard, the Court agrees that the Lindstroms' breach of contract claim is not categorically barred as a matter of law based upon the terms of the Purchase Contract and the allegations in the Complaint.   Accordingly, the Motion is denied as to Count I.

## II.    Count III (Breach of Express and Implied Warranties)

Count III alleges that Reid made unspecified "express and/or implied warranties to [the Lindstroms that] the Property was free of all defects, including excessive and improper grading and fill."   Complaint ¶ 26.   The Purchase Contract, however, disclaims all warranties, express and implied, in the "As Is" Addendum and Seller Disclosure.   In opposition to the Motion, the Lindstroms acknowledge that they cannot maintain any claim based on express warranty.   *See* Mem. in Opp'n at 10.   Instead, they argue that Count III rests on the implied warranty of habitability implied in Hawaii law.   *See id.* (citing *Lemle v. Breeden*, 462 P.2d 470, 474, 51 Haw. 426, 433 (1969)).

The Lindstroms' argument is without merit for two reasons.   First, as noted above, the Purchase Agreement's "As Is" Addendum explicitly disclaims *all* warranties, including implied warranties.   *See* Purchase Agreement, "As Is" Addendum ¶ 5 ("[T]he Property will be sold and transferred at closing in "AS IS" CONDITION, WITHOUT ANY REPRESENTATIONS OR WARRANTIES, EXRESSED OR IMPLIED.").   Second, the implied warranty of habitability does not apply under the circumstances here, where the allegations involve the purchase of an undeveloped parcel of land.   *See, e.g.*, *Barber v. Ohana Military Communities, LLC*, 2014 WL 3529766, at *6 (D. Haw. July 15, 2014) ("A property owner breaches the implied warranty of habitability if he leases his property with a

13

defect or unsafe condition that is 'of a nature and kind which will render the premises unsafe, or unsanitary and thus unfit for living.'") (quoting *Armstrong v. Cione*, 736 P.2d 440, 445 (Haw. Ct. App. 1987)); *Doe v. Grosvenor Ctr. Assocs.*, 104 Hawai'i 500, 514, 92 P.3d 1010, 1024 (Ct. App. 2004) (Noting that Hawaii courts have not extended the implied warranty of habitability beyond residential leases to commercial leases, and declining to do so where a tenant of a commercial sub-lease suffered a physical attack in an office building.); *Lemle v. Breeden*, 51 Haw. 426, 462 P.2d 470 (1969) (recognizing the doctrine of implied warranty of habitability and finding rat infestation of leased premises constituted a breach).

The Lindstroms cannot maintain a claim for breach of the implied warranty of habitability for the purchase of an undeveloped parcel of real property where the Purchase Contract itself disclaims implied warranties.   Accordingly, Reid's Motion is granted with respect to Count III.   Because amendment would be futile, the claim for breach of warranties is dismissed without leave to amend.

## III.   <u>Count IV (Rescission)</u>

The Lindstroms agree that rescission is a remedy and not an independent claim for relief.   *See* Mem. in Opp'n at 11; *see also Campollo v. Bank of Am.*, 2011 WL 2457674, at *5 (D. Haw. June 16, 2011) ("[R]escission 'is only a remedy, not a cause of action.'   A right of rescission thus 'rises or falls with [the] other claims.'") (citing *Bischoff v. Cook*, 118 Haw. 154, 163, 185 P.3d 902, 911 (Ct. App. 2008), and

*Ballard v. Chase Bank USA, N.A.*, 2010 WL 5114952, at *8 (S.D. Cal. Dec. 9, 2010)).

Reid's Motion is granted with respect to Count IV. Because amendment would be futile, the stand-alone claim for rescission is dismissed without leave to amend. Rescission may be available if the Lindstroms are entitled to such a remedy through an independent cause of action. *See* Complaint, Prayer for Relief ¶ F.

## IV.   Count V (Tortious Breach of Contract)

The Lindstroms appear to concede that Hawaii does not recognize a claim for tortious breach of contract. Mem. in Opp'n at 11 (citing *Francis v. Lee Enters.*, 89 Hawai'i 234, 971 P.2d 707 (1999), and *Kapunakea Partners v. Equilon Enters. LLC*, 679 F. Supp. 2d 1203, 1218-19 (D. Haw. 2009)). To the extent they do not, the Court finds that the claim is unavailable as a matter of law. The Lindstroms are not entitled to recovery in tort for "emotional distress, mental anguish, [and] other damages," Complaint ¶ 34, in the absence of conduct that both violates a duty that is independently recognized by principles of tort law and transcends the breach of the contract. *See Francis*, 89 Hawai'i at 244, 971 P.2d at 708 (1999) (Abolishing tortious breach of contract cause of action, while explaining that "Hawai'i law will not allow a recovery in tort, including a recovery of punitive damages, in the absence of conduct that (1) violates a duty that is independently recognized by principles of tort law and (2) transcends the breach of the contract.").

The Lindstroms' reliance on *Kapunakea* does not alter this outcome. That is because the issue addressed in *Kapunakea* was whether Hawaii courts would recognize a cause of action under certain circumstances for "tortious interference with a prospective business advantage"—a claim that is *not* implicated in the present real property dispute.[2]

Accordingly, Reid's Motion is granted with respect to Count V.   Because amendment would be futile, dismissal of the claim for tortious breach of contract is without leave to amend.

## V.    Count VI (Negligent Misrepresentation)

Although Count VI alleges both negligent and/or intentional misrepresentation, the Court takes up these two causes of action separately, and

---

[2]In *Kapunakea*, the district court explained the "tortious interference with a prospective business advantage" issue as follows—

> if a court were to conclude that a breach of contract could satisfy the improper interference element of the tort of tortious interference with a prospective business advantage under Hawai'i law, it would be tantamount to resurrecting the tort of tortious breach of contract, albeit in certain limited circumstances. Given that the *Francis* [*v. Lee Enterprises*, 89 Hawai'i 234, 971 P.2d 707 (1999),] court abolished the tort of tortious breach of contract, the Court predicts that, if presented with the question, the Hawai'i Supreme Court would hold that a breach of contract, even if done for improper purposes, does not without more give rise to improper interference for purposes of a tortious interference with a prospective business advantage claim.

*Kapunakea*, 679 F. Supp. 2d at 1219.

addresses the intentional misrepresentation claim below together with the

Lindstroms' Count VII claim for fraud.

Count VI states that Defendants "negligently misrepresented the condition of

the Property by failing to disclose to [the Lindstroms] the excessive and improper

grading and fill, and that grading was conducted without any grading permit or in

excess of what the grading permit allowed."   Complaint ¶ 36.   Additionally, the

Lindstroms allege that Defendants "misrepresented the condition of the Property by

failing to make the required disclosures, which failures directly and proximately

caused damage to Plaintiffs."   Complaint ¶ 36.

In a negligent misrepresentation claim, Hawaiʻi law requires that "(1) false

information be supplied as a result of the failure to exercise reasonable care or

competence in communicating the information; (2) the person for whose benefit the

information is supplied suffered the loss; and (3) the recipient relies upon the

misrepresentation."   *Blair v. Ing*, 95 Hawaiʻi 247, 269, 21 P.3d 452, 474 (2001)

(citing Restatement (Second) of Torts § 552); *see also Peace Software, Inc. v.

Hawaiian Elec. Co., Inc.*, 2009 WL 3923350, at *6 (D. Haw. Nov. 17, 2009) (relying

on *Blair* for the Hawaiʻi standard for negligent misrepresentation).   Because a

negligent misrepresentation claim does not require intent, it is generally not subject

to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

*See id*. at *8; *Queen's Med. Ctr. v. Kaiser Found. Health Plan, Inc.*, 948 F. Supp. 2d

1131, 1156 (D. Haw. 2013) ("[N]egligent representation claims do not need to be pled with particularity under Rule 9(b).").

Reid seeks dismissal based upon the Lindstroms' purported failure to plead the reliance element of their negligent misrepresentation claim.   Under the totality of the circumstances, however, the Lindstroms plausibly allege reliance on Defendants' ostensible misrepresentations and omissions.   For example, in another section of the Complaint, the Lindstroms allege that they considered Defendants' purported misrepresentations in their decision to purchase the Property, "which they would not have done had the true facts about the Property been disclosed." Complaint ¶ 40; *see also* Complaint ¶¶ 8-14, 36-37.   The absence of specific words in the Complaint, such as "justifiable reliance" or that the Lindstroms "reasonably relied upon" Reid's alleged misrepresentations, is not fatal to the negligent misrepresentation claim for purposes of the instant Motion.   *See, e.g.*, *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 380 (9th Cir. 2003) (Holding that "reliance may be established on the basis of circumstantial evidence showing the alleged fraudulent misrepresentation . . . *substantially influenced* the party's choice, even though other influences may have operated as well.") (emphasis in original) (citation and quotation signals omitted); *see also Queen's Med. Ctr.*, 948 F. Supp. 2d at 1152 (footnote omitted) ("Regarding the fourth requirement, Plaintiff [sufficiently] pleads reliance upon Kaiser's representations in the form of continuing

18

to provide services and accepting payment on the bills.") (citing *Three Rivers Provider Network, Inc. v. Meritain Health, Inc.*, No. 07CV1900 WQH(BLM), 2008 WL 2872664 at *10 (S.D. Cal. 2008) (holding that plaintiff adequately alleged reliance by stating that it continued to work with defendant based on the representations)).

Accordingly, viewing the Complaint in its entirety, the Court finds that the Lindstroms adequately state a claim for negligent misrepresentation, including the element of reliance.   Any challenge to the reasonableness of the Lindstroms' reliance raises a fact issue that cannot be resolved on a motion to dismiss.   Reid's Motion is therefore denied with respect to Count VI's negligent misrepresentation claim.

## VI.   Count VI (Intentional Misrepresentation) And Count VII (Fraud)

Count VII alleges that—

> 39.   [F]ailing to disclose to Plaintiffs the excessive and improper grading and fill on the Property, and failing to disclose grading was conducted without any grading permit or in excess of what the grading permits allowed, constituted fraud by Defendants.

> 40.   Plaintiffs were induced by the fraudulent statements and omissions by Defendants to purchase the Property, which they would not have done had the true facts about the Property been disclosed.

Complaint ¶¶ 39-40.   The Lindstroms also allege that Moffett "deliberately and intentionally failed to disclose a hidden and dangerous defect on the Property[.]" Complaint ¶ 8.

With respect to Defendants' knowledge of the Property's condition, the Complaint states, in relevant part—

> 16.   On information and belief, Realty, Moffett, and Reid (collectively, "Defendants") knew or should have known of the hidden defect on the Property due to the excessive and improper grading and fill on the Property.

> 17.   On information and belief, Defendants knew or should have known of the failure to conduct the proper soil investigation and the failure to obtain the proper grading permit, as well [as] the grading and fill on the Property without any grading permit or in excess of what the grading permit allowed.

Complaint ¶¶ 16-17.

Under Hawaii law, the elements of intentional misrepresentation or fraud are as follows: "(1) false representations were made by defendants, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them."   *Shoppe v. Gucci America, Inc.,* 94 Hawaiʻi 368, 386, 14 P.3d 1049 (2000); *see also Queen's Med. Ctr. v. Kaiser Found. Health Plan, Inc*., 948 F. Supp. 2d 1131, 1151 (D. Haw. 2013) (same).

20

Reid moves to dismiss the claims sounding in fraud for failure to comply with

Federal Rule of Civil Procedure 9(b).    Allegations of fraudulent conduct are

sufficient under Rule 9(b) if they "identif[y] the circumstances constituting fraud so

that the defendant can prepare an adequate answer from the allegations."

*Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (citations and quotations

omitted).    To sufficiently identify the circumstances that constitute fraud, a plaintiff

generally must identify the times, dates, places, or other details of the alleged

fraudulent activity.    *Id.*    A plaintiff must plead these evidentiary facts and must

explain why the alleged conduct or statements are fraudulent:

> Averments of fraud must be accompanied by "the who, what,
> when, where, and how" of the misconduct charged.    *Cooper v.*
> *Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (internal quotation
> marks omitted).    "[A] plaintiff must set forth more than the
> neutral facts necessary to identify the transaction.    The plaintiff
> must set forth what is false or misleading about the statement,
> and why it is false."    *Decker v. GlenFed, Inc.* (*In re GlenFed,*
> *Inc. Sec. Litig.*), 42 F.3d 1541, 1548 (9th Cir. 1994).

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Reid attacks the particularity of the averments of fraud alleged in the

Complaint "on information and belief," *i.e.*, that he "knew or should have known"

facts regarding the condition of the Property that were not disclosed.    *See*

Complaint ¶¶ 16-17.

In order to support a claim of fraud on "information and belief," a plaintiff

must set forth the source of the information and the reasons for the belief.    "Claims

made on information and belief are not usually sufficiently particular, unless they accompany a statement of facts on which the belief is founded." *Shroyer v. New Cingular Wireless Services, Inc*., 622 F.3d 1035, 1042 (9th Cir. 2010); *see also Neubronner*, 6 F.3d at 672 (["[A] plaintiff who makes allegations on information and belief must state the factual basis for the belief."); *Puri v. Khalsa*, 2017 WL 66621, at *5 (9th Cir. Jan. 6, 2017) ("Allegations of fraud based on information and belief may suffice as to matters peculiarly within the opposing party's knowledge, so long as the allegations are accompanied by a statement of the facts upon which the belief is founded.") (citation omitted).

The Court agrees that the Complaint provides no factual basis for the allegations on information and belief that Reid "knew or should have known" of the latent condition on the Property.   That is, there is no explanation for the factual basis giving rise to the Lindstroms' belief that Reid knew or should have known of the Property's defects, which they themselves did not discover.  *See United States v. Marshall Med. Ctr.,* 2015 WL 2235461, at *3 (E.D. Cal. May 12, 2015) ("'Factual basis' means that the complaint must contain facts, rather than general circumstances."); *see also Puri*, 2017 WL 66621, at *6 (allegations made on information and belief "are appropriate regarding matters known only to the defendants, but only insofar as the complaint also explains the basis for the belief"). Because the Complaint and relevant documents do not provide sufficient details

underlying the Lindstroms' belief that the statements or omissions were made or withheld with the requisite knowledge, the allegations do not satisfy the particularized pleading requirement of Rule 9(b).

In sum, based upon the failure to satisfy the particularity requirements of Rule 9(b), the Lindstroms' fraud-based allegations in Counts VI and VII are dismissed. Because amendment may be possible, the Lindstroms are granted leave to amend their intentional misrepresentation and fraud claims, addressing the deficiencies identified in this Order, by no later than **May 1, 2017**.

## <u>CONCLUSION</u>

For the foregoing reasons, Reid's Motion to Dismiss is GRANTED as to Count III (Breach of Express and Implied Warranties), Count IV (Rescission), and Count V (Tortious Breach of Contract)—those claims are dismissed with prejudice. The claims for intentional misrepresentation (Count VI) and fraud (Count VII) are dismissed with leave to amend.   The Lindstroms are granted limited leave to file an

///


///


///

amended complaint, consistent with the terms of this Order, by no later than **May 1,**

**2017**.

The Motion is DENIED as to Count I (Breach of Contract) and Count VI

(Negligent Misrepresentation).

IT IS SO ORDERED.

DATED: April 5, 2017 at Honolulu, Hawaiʻi.



_____
Derrick K. Watson
United States District Judge

_Lindstrom et al. v. Moffett Props. et al._, CV. NO. 16-00079 DKW-RLP; **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MICHAEL REID'S MOTION TO DISMISS**

24